UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DARREN F. HEARN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:11-CV-00394 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Darren Hearn appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Hearn applied for SSI in September 2006 alleging disability as of January 30, 2002, which he later amended to August 18, 2006. (Tr. 12, 43, 181-88.) The Commissioner denied his application initially and upon reconsideration. (Tr. 81-85.) A hearing was held on November 19, 2009, before Administrative Law Judge ("ALJ") Terry Miller, at which Hearn (who was represented by counsel) and a vocational expert ("VE") testified. (Tr. 32-75.) On February 19, 2010, the ALJ rendered an unfavorable decision to Hearn, concluding that he was not disabled because he could perform a significant number of light work jobs in the economy. (Tr. 12-25.)

---

[1] All parties have consented to the Magistrate Judge. (Docket # 12); *see* 28 U.S.C. § 636(c).

The Appeals Council denied his request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 1-6.)

Hearn filed a complaint with this Court on November 16, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) Hearn advances just one argument in this appeal—that the ALJ erred by failing to properly account for his moderate deficiencies in maintaining concentration, persistence, or pace in his residual functional capacity ("RFC") and in the hypothetical posed to the VE at step five. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 7-10.)

## II. FACTUAL BACKGROUND[2]

### *A. Background*

At the time of the ALJ's decision, Hearn was fifty years old and had past relevant work as a press operator and production laborer; he attended school through the tenth grade while participating in special education classes and later obtained his GED. (Tr. 181, 213, 264.) He alleges that he became disabled due to the following impairments: a history of HIV positive with systemic myalgias, including low back pain; a history of poor vision; a history of asthma; a history of hernia repair surgeries; depression; and testing results for a subaverage IQ consistent with borderline intellectual functioning. (Opening Br. 2.) Hearn does not challenge the ALJ's findings concerning his physical limitations (Opening Br. 2 n.1); accordingly, the Court will focus on the evidence relating to his mental impairments.

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 767-page administrative record necessary to the decision.

### B. *Hearn's Testimony at the Hearing*

At the hearing, Hearn testified that he was single, lives alone in a one-story home, and is independent with his self-care tasks. (Tr. 39-40, 63.) He has minor children who visit on weekends. (Tr. 40.) He had a driver's license, but it was suspended after a driving violation; he also admitted to using cocaine a few months prior to the hearing. (Tr. 40-42, 61.) In a typical day, Hearn watches television, naps, and helps friends by performing odd jobs, such as caring for a pet or washing dishes. (Tr. 62, 64.) Hearn's girlfriend performs his household chores, but he stated that he could do them if necessary. (Tr. 62, 66.)

### C. *Summary of the Relevant Medical Evidence*

On July 13, 2001, Hearn saw Dr. Maria Curfman, an infectious disease specialist, upon referral by the AIDS Task Force due to a recent diagnosis of HIV. (Tr. 362-64.) Dr. Curfman noted that Hearn had no history of suicide attempts or depressive disorder and that he was still abusing crack on a regular basis. (Tr. 362-63.)

On October 26, 2006, Hearn was evaluated by Rosalind Huang, Psy.D., at the request of the Social Security Administration. (Tr. 551-55.) She observed that he appeared anxious, and he reported that he felt sad, depressed, helpless, and hopeless. (Tr. 552-53.) Upon evaluation, Hearn's comprehension was fair, but his concentration and memory were weak. (Tr. 552.) On the WAIS-III, he obtained a full scale IQ of 69, a verbal IQ of 70, and a performance IQ of 73. (Tr. 554.) Areas of weakness were in visual-motor speed and coordination. (Tr. 554.) Dr. Huang assigned a Global Assessment of Functioning ("GAF") score of 50 and diagnosed him

with a major depressive disorder, severe, with psychotic features, and mild mental retardation.[3] (Tr. 555.)

In November 2006, Joelle Larsen, Ph.D., a state agency psychologist, reviewed Hearn's record and concluded that he had moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace, and mild limitations in maintaining social functioning. (Tr. 573.) In a mental residual functional capacity assessment, Dr. Larsen indicated that Hearn was not significantly limited in sixteen of twenty mental activities, but was moderately limited in the ability to understand and remember detailed instructions, complete a normal workday and work week without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. 559-60.)

In the narrative portion of her report, Dr. Larsen documented that Hearn's activities of daily living were primarily limited by physical issues and that his long work history, which ended due to physical issues, cut against any claim that intelligence limits his ability to perform simple tasks. (Tr. 561.) She also noted that Hearn was not receiving any psychological treatment, that he "can cooperate and tolerate the casual interactions necessary to perform tasks," and that his attention and concentration were consistent with his cognitive functioning. (Tr. 561.) She thought his pace appeared within normal limits, that he could attend to a two-hour task, and

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

that he was capable of maintaining a schedule. (Tr. 561.) She opined that Hearn had the cognitive abilities and concentration necessary to complete tasks, make work-related decisions, and remember locations and work-like procedures. (Tr. 561.) Dr. Larsen then concluded that although Hearn's impairments might interfere with the completion of complex tasks, they "would allow for the completion of simple, repetitive tasks." (Tr. 561.) Dr. Larsen's opinion was later affirmed by J. Gange, Ph.D., a second state agency psychologist. (Tr. 610.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

5

## IV. ANALYSIS

### *A. The Law*

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

In determining whether Hearn is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

## B. The ALJ's Decision

On February 19, 2010, the ALJ issued the decision that ultimately became the Commissioner's final decision. (Tr. 12-25.) He found at step one of the five-step analysis that Hearn had not engaged in substantial gainful activity after his alleged onset date. (Tr. 14.) At step two, he determined that Hearn had the following severe impairments: a history of HIV positive with systemic myalgias, including low back pain; a history of asthma; a history of poor vision; a history of hernia repair surgeries; testing results for subaverage IQ most consistent with borderline intellectual functioning; depression; and a history of poly-substance abuse, including recent testing results positive for marijuana and cocaine. (Tr. 14.) At step three, the ALJ determined that Hearn's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 15.)

Before proceeding to step four, the ALJ determined that Hearn's symptom testimony was not credible to the extent it portrayed limitations in excess of the following RFC:

> [T]he claimant has the residual functional capacity to perform "light" work . . . , except as further limited by the following: only frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing of ladders, ropes or scaffolds; only frequent, but no constant, near and far visual acuity work; a need to avoid concentrated exposure to hazards . . . ; a need to avoid concentrated exposure to pulmonary irritants . . . ; and a limitation to unskilled work with no detailed or complex work consistent with a retained capacity to understand, carry out and remember simple instructions, to make simple work-related decisions, to respond appropriately to supervisors, co-workers and usual work situations, and to deal with changes in a routine work setting.

(Tr. 18.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Hearn was unable to perform any of his past relevant work. (Tr. 23.) The ALJ then concluded at step five that he could perform a significant number of other light work jobs within the economy,

including cashier, mail clerk/sorter, and administrative support worker. (Tr. 24.) Accordingly, Hearn's claim for SSI was denied. (Tr. 25.)

### C. *The ALJ's Step Five Finding Is Supported by Substantial Evidence*

In his sole argument in this appeal, Hearn contends that the ALJ erred when assigning his RFC and posing a hypothetical to the VE at step five, contending that the ALJ failed to account for his moderate deficiencies in maintaining concentration, persistence, or pace. Hearn's argument is ultimately unpersuasive.

At step two of the five-step sequential analysis, the ALJ must determine whether a claimant's impairment(s) is "severe." 20 C.F.R. § 416.920(a)(4)(ii). In determining the severity of a claimant's mental impairments at step two of his five-step analysis, the ALJ addresses the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c)(3); *see Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then incorporate these limitations into the hypothetical questions posed to the VE at step five. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (finding that the ALJ erred when his hypothetical question to the VE failed to take into account his finding at step two that the claimant had deficiencies in social functioning and concentration, persistence, and pace); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (remanding case where the ALJ failed to adequately account for the claimant's social limitations in the RFC); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate

*all* relevant limitations from which the claimant suffers." *Kasarsky*, 335 F.3d at 543-44 (emphasis added).

Here, the ALJ found at step three that Hearn had moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace, as well as minimal difficulties in maintaining social functioning. (Tr. 17.) After determining that Hearn's mental impairments were significant enough to be "severe" but not severe enough to meet a listing-level impairment, the ALJ assigned him an RFC limiting him to "unskilled work with no detailed or complex work consistent with a retained capacity to understand, carry out and remember simple instructions, to make simple work-related decisions, to respond appropriately to supervisors, co-workers and usual work situations, and to deal with changes in a routine work setting." (Tr. 17-18.) Contrary to Hearn's argument, in this instance the ALJ adequately accounted for his deficiencies in maintaining concentration, persistence, or pace by assigning him this limitation in the RFC, which was then adequately incorporated into the ALJ's hypothetical to the VE. (*See* Tr. 70-71.)

In assigning the RFC for unskilled work, the ALJ relied upon the opinion of Dr. Larsen, the state agency psychologist who reviewed Hearn's record and concluded that although he had moderate difficulties in maintaining concentration, persistence, or pace and activities of daily living, he could still perform work involving simple, repetitive tasks. (Tr. 561, 573.) Dr. Larsen's opinion was later affirmed by a second state agency psychologist, Dr. Gange.

The instant circumstances are analogous to the facts confronting the Seventh Circuit in *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).[5] There, the ALJ determined that

---

[5] Hearn contends that the instant facts are more analogous to those presented in *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011), in which the Seventh Circuit found that a limitation to "sedentary" and "light" unskilled work was not sufficient to accommodate deficiencies in the claimant' ability to maintain regular work attendance, carry out instructions, and deal with the stresses of full-time employment. But there is no indication in the *Jelinek*

the claimant was moderately limited in his ability to maintain a regular schedule and attendance and in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *Id*. In posing a hypothetical to the VE, the ALJ relied upon the opinion of a consulting physician who stated that because the claimant was not significantly limited in seventeen of twenty work-related areas of mental functioning, he retained the mental RFC to perform "low-stress, repetitive work." *Id*. The Court of Appeals concluded that the ALJ's limitation to low-stress, repetitive work adequately incorporated Johansen's moderate mental limitations, articulating that the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work." *Id.*; *see also Milliken v. Astrue,* 397 F. App'x 218, 221-22 (7th Cir. 2010) (unpublished) (affirming ALJ's step five finding where a medical expert opined that despite claimant's difficulties in social functioning and concentration, persistence, or pace, she could still perform unskilled work).

Here, like the consulting physician in *Johansen*, Dr. Larsen essentially "translated [his] findings into a specific RFC assessment." 314 F.3d at 288. That is, Dr. Larsen concluded that despite Hearn's moderate difficulties in maintaining concentration, persistence, or pace and activities of daily living (Tr. 573), he could still perform simple, repetitive tasks (Tr. 561). Although the ALJ's RFC does not reflect a word-for-word translation of Dr. Larsen's clinical

---

opinion that the state agency psychologists actually articulated that the claimant could perform simple, repetitive tasks like Dr. Larsen did here. Of course, "[t]he regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (citing 20 C.F.R. § 404.1527(e)(2)(i)); *see* 20 C.F.R. § 416.927(e)(2)(i). Therefore, *Jelinek* is distinguishable from the instant circumstances.

       The facts at hand are also distinguishable from those presented in *O'Connor-Spinner*, 627 F.3d at 617-18. There, the ALJ failed to incorporate all of the mental limitations assigned in the RFC into the hypothetical posed to the VE at step five. *Id*. Here, the hypothetical posed by the ALJ to the VE at step five adequately reflects all of the limitations assigned in the RFC. (*Compare* Tr. 69-71, *with* Tr. 17-18.)

10

findings—that is a limitation to "simple, repetitive tasks"—the ALJ clearly adopted this limitation when he limited Hearn to "unskilled work with no detailed or complex work consistent with a retained capacity to understand, carry out and remember simple instructions, to make simple work-related decisions, to respond appropriately to supervisors, co-workers and usual work situations, and to deal with changes in a routine work setting." (Tr. 17-18.)

"Unskilled work" is defined in the regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a); *see Jelinek*, 662 F.3d at 813-14. Consistent with the RFC assigned by the ALJ, the Social Security Administration has articulated that the following mental activities are generally required to perform unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work (i.e., simple work-related decisions); responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374186, at *9; *see Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) ("[W]here the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of 'unskilled' work would be appropriate.").

Dr. Larsen's opinion specifically addressed Hearn's limitations with respect to these mental activities. She opined that Hearn was "not significantly limited" in sixteen of twenty categories of mental activities, including the ability to understand, remember, and carry-out simple instructions; make simple work-related decisions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along

11

with coworkers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior. (Tr. 559-60.) The only relevant category that Dr. Larsen found Hearn to be "moderately limited" in was the ability to respond appropriately to changes in the work setting. (Tr. 560.) In fact, Dr. Larsen specifically articulated that the limitations Hearn experienced in his activities of daily living were primarily attributable to his physical problems. (Tr. 561.)

Hearn also argues that the ALJ erred by failing to mention the GAF score of 50 assigned by Dr. Huang and urges that this GAF is inconsistent with an RFC for unskilled work. But Dr. Larsen, upon whose opinion the ALJ relied, expressly considered this GAF score when concluding that Hearn retained the ability to perform simple, repetitive tasks.[6] (Tr. 561.) In any event, "GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability." *Curry v. Astrue*, No. 3:09-cv-565, 2010 WL 4537868, at *7 (N.D. Ind. Nov. 2, 2010). "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation and internal quotation marks omitted); *accord Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011) (unpublished).

To reiterate, an ALJ "is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005); *see Johansen*, 314 F.3d at 289 ("All that is required is

---

[6] Although Dr. Larsen recited that a GAF score of 50 is indicative of "moderate" symptoms, it actually is at the very high end of the range of "serious symptoms," as articulated in note 3 *infra*. However, "no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

12

that the hypothetical question [to the VE] be supported by the medical evidence in the record." (quoting *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987))). Because Dr. Larsen translated Hearn's moderate difficulties in maintaining concentration, persistence, or pace into an RFC that reflected the capacity to perform the mental activities identified by the Social Security Administration for "unskilled work," substantial evidence supports the ALJ's step-five finding. *See, e.g.*, *Orucevic v. Astrue*, No. C07-1981 CRD, 2008 WL 4621420, at *7 (W.D. Wash. Oct. 16, 2008) (affirming the ALJ's decision limiting the claimant to "unskilled" work where the record indicated she could perform "simple, repetitive tasks," observing that the Social Security Administration's definition of "unskilled" work "describes repetitive tasks as the primary work duty"); *Karger v. Astrue*, 566 F. Supp. 2d 897, 909 (W.D. Wis. 2008) (affirming ALJ's decision where the record indicated that the claimant had the prerequisite mental abilities necessary to perform "unskilled" work).

Thus, Hearn's sole argument on appeal—that his RFC and the hypothetical posed to the ALJ at step five did not account for his moderate difficulties in concentration, persistence, or pace—does not warrant a remand of the Commissioner's final decision.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Hearn.

SO ORDERED.

Enter for this 24th day of September, 2012.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge